Good morning. My name is Shazi Nassim and I represent the appellant in this case, Markus Patterson. Mr. Patterson asks that the district court's finding that the guideline murder cross-reference applied to his conduct be vacated and remanded for resentencing. And this is the main argument that I'd like to focus on this morning. Additionally, as I briefed in my brief, Mr. Patterson also asks that the court vacate Mr. Patterson's drug conviction and remand for resentencing to determine a proper weight, the drug weight calculation as it relates to his relevant conduct in the case. And as the court knows from the briefs and the record, there were two deaths that occurred in this case. One was Brittany Broyles and the other was James Hampton. I'd like to focus my discussion this morning on the death of one of the victims in this case, James Hampton. And the prejudice that results from this finding is substantial for Mr. Patterson because without the cross-reference to murder enhancement, Mr. Patterson was looking at an adjusted total offense level of 35 with a criminal history category of 6. Why does the other side think it doesn't matter because it'd still be 43 regardless? I think, Your Honor, that the other side believes that because the cross-reference or because there were two murders in the case and because they allege that Mr. Patterson was involved in that, that the higher guideline range would have still applied. Are they wrong? I believe that they are wrong, Your Honor. Why? Well, I believe that but for the finding that the district court enters, which is the cross-reference of murder, his sentence would not have contained that enhancement and the court would not have viewed Mr. Patterson in the light that he did, which is that he was a murderer. And that is simply not the case based on the facts that are presented. And so the court's viewpoint is in some ways conditioned by a finding that he was involved in and committed the murder of James Hampton. What's required for the cross-reference to apply? The court has to find that there was a premeditated intent on the part of the defendant or that the defendant act with callousness or reckless indifference to life. And that that murder occurs in the course of the conspiracy, which was the drug distribution. Is that premeditation requirement in the guidelines itself or is that in case law that you've referenced? The premeditation, as I recall, Your Honor, was in 2A1.1. I forget the exact statute. But it does contain a premeditation requirement or reckless indifference callousness to life. What's your best argument that there wasn't reckless indifference in this case for Mr. Patterson and his conduct? Your Honor, I believe this case is unique from other cases that have come before this court. There is a gap in time of four days between when Mr. Patterson last seized the victim and others testify is alive in the trunk of the car and four days elapse when Mr. Patterson is then identified as having been in contact with the victim and the victim is recovered from the trunk of the car. And you say then that the inference that the judge drew in his sentencing findings of essentially that it was inevitable when he got into the trunk of that car that he was going to die and that was not reasonably foreseeable to your client that that is a clearly erroneous factual finding. I agree 100% with what you're saying, Your Honor. And I say that because as the facts are articulated in this case, when the car, originally the beating that takes place of Mr. Hampton occurs in the St. Louis area. Mr. Patterson was present for that. He was present for that, Your Honor. And participated He did, as did numerous other folks that were present at that house. They then placed Mr. Hampton in the trunk of the car. That trunk is secured and they transport that car back to Kansas City. When they arrive back in Kansas City on August 2nd, the car is then taken by Mr. Sparks, who's a co-defendant in this case, to another unindicted associate named Steve Williams and that car is placed in the garage. No further violence occurs to Mr. Hampton at that point and only present there are Mr. Sparks, Mr. Williams, Vincente Arroyo, who's another co-defendant in this case, and Mr. Patterson. What Peter, what Patterson was there for, as I understand it, was like he was, Mr. Hampton was tied to a chair. He was beat with a frying pan. He was, they used a drill to drill holes in his knees. They, Mr. Patterson struck Hampton repeatedly with a gun that was a fake gun, but with a gun until it broke. Why isn't it reasonably foreseeable after this beating, which seems kind of like on a brutality scale a bit above average, right? I mean, and I sat as a district judge both in the state court and the federal court and saw a lot of murders in my lifetime and this one seems exceptionally brutal. I mean, why wasn't it foreseeable to Patterson at that point that Mr. Hampton's injuries were fatal? Well, in your honor, I would submit to you that based on two other incidents that are elicited at trial, there was evidence to believe that Mr. Patterson did not see that it was reasonably foreseeable that this beating would result in Mr. Hampton's death. And I point specifically to two incidents that were testified to at trial. One, there was testimony that a witness was beaten for three days in the basement of Mr. Sparks' home. Patterson was present for that, but at the conclusion of that beating, they let him go. There was another incident where they were beating a woman because they thought that she was a snitch, but at the conclusion of that interrogation, they also let her go. Patterson was present for that. And so in this particular instance, when the beating occurs, and there are multiple people that are there, your honor, for that beating, and multiple people are doing the things that you're talking about. And it is true that Mr. Patterson used a plastic gun that broke while he was doing it, but that is different than, I would suggest, a real gun. However, Mr. Patterson, based on prior history with this conspiracy, had no reason to believe that now this beating wouldn't result in the same thing, which is that Mr. Hampton would eventually be let go. And whether that occurs in St. Louis, which it didn't, or whether it occurs in Kansas City, the point I want to make about Mr. Patterson's involvement and why I think it's an erroneous finding that he was alleged to have been involved in the murder, is because the car is delivered somewhere else, and Mr. Patterson leaves. And there is no testimony during that four days that Mr. Patterson interacted at all with the victim in that trunk, and there were other co-conspirators in the case who had equal access to that vehicle, if not greater. When Mr. Patterson shows up four days later, and the car is ultimately burned, when they recover the body, they essentially have no forensic evidence to determine what the cause of death was. They can't say whether it was the burning of the car, but they also don't know whether someone else shot him, and there is... I'm sorry, go on. Does that matter? I mean, on the cross-reference, can you rely on aiding and abetting in the murder, or is that not permissible? And if it's aiding and abetting, does it matter whether the body's alive or not? You're destroying the evidence. You've aided and abetted in the murder and the investigation of it. I think the context of the aiding and abetting has to occur as you analyze the relevant conduct. So in other words, what's the foreseeability of what's about to happen to this individual? And if you determine that the scope of what was going to happen was not reasonably foreseeable to Mr. Patterson, then I don't think you could come up with a finding that it was obviously then aiding and abetting. And I would suggest that the evidence in this case did not present any text messages about going to beat up Hampton. There was no exchange in advance amongst the co-conspirators that they were going to kill him or put him in the trunk. The things that happened that evening on August 2nd occur somewhat spontaneously, and so there is no premeditated plan. There is no reasonable, foreseeable thought to Patterson as he approaches that incident that he is going to be involved in a murder. The importance of the time frame and the elapsed time between August 2nd and August 4th is that Mr. Patterson does not believe that this incident is going to be one that's different from the previous two where they have let people go. And I think that's the distinguishing characteristic from other cases in this circuit where when there is a murder, and Judge Erickson, as you say, where there is some aiding and abetting that goes along, perhaps the co-defendant is present for the actual murder, sees it occur, may say that I didn't pull the trigger. Maybe there is a subsequent confession that occurs by that person, and that person tries to suppress the statement. And in all of those instances, and I've not read every case in the Eighth Circuit, but in most cases there is some causal link, direct causal link, between the fact that there is this space and gap in time where we don't know what happened. And I would suggest that if you're going to hold someone accountable for murder, it should be more akin to the U.S. Supreme Court's determination in Barrage, which actually came through this circuit. And Judge Benton, I know you were a part of that case, but but-for causation was the thing that the Supreme Court articulated when you have a drug-related death. And that's as it relates to the ingestion of substances that potentially have been provided by a drug dealer. And I would suggest that the same standard but-for causation, a clear causal connection has to be established. And when you cannot establish that, nor the foreseeability of what was about to happen, the Court's reliance on statements in the PSR and trial testimony that didn't even involve Mr. Patterson is clearly an erroneous finding. And I'll reserve the rest of my time unless the Court has any questions. Thank you, Counsel. Mr. Moore. May it please the Court. Your Honor. Counsel. I represent Mr. Sparks. And we are arguing in this appeal that the District Court erred in allowing the government to basically conduct a murder trial in all but name. With the inflammatory testimony, the negative connotations, without the requisite burden of proof that would be required if they actually brought those charges. We also believe that based off of that, they denied our motion to eliminate. Testimony did come in. We feel that that both clouded the jury's minds as well as tainted the sentencing. Because we also received that same cross-reference to first-degree murder. Can we kind of step back and just talk through the two points here on this issue that I think are here? The first issue is, is it intrinsic evidence because it relates to the collection of proceeds from drugs and sort of maintaining order within the organization? And so, because that makes it very different, a very different analysis, I think, than if it's just somehow just relevant generally. That's a great question. I believe both what the AUSA at trial, Mr. Bruce Rhodes, and the cases he was citing during the motion to eliminate, the cases that Judge Kays ultimately used when he wrote his order, they involve co-conspirators murdering and assaulting and other co-conspirators. There is no evidence that came from this jury trial that shows that either of the victims, Hampton or Bernie Royals, were co-conspirators. It seems that what actually happened is they met them that night. The cases that the government cites... But is there any question that the purpose for the meeting was collection of proceeds that Mr. Sparks believed had been somehow taken from him? There was testimony that that was what Mr. Hampton, how he came into it. He believed he could find somebody that had gone missing with drug proceeds. But again, the cases that the one cited by Judge Kays, and again the government, all is maintaining order and is co-conspirator. The meeting wouldn't have happened but for the drug conspiracy. Unclear. What would have been the purpose for beating Hampton? Say again? What would have been the purpose for beating Hampton for his refusal to disclose the location of the person suspected of having the money? The group that Mr. Sparks worked with, they were violent people, but it is unclear if the violence would have occurred but for the missing thing. I am not entirely sure. I feel though that it was painted in a light that tried to show that that is the only reason it was for. Mr. Sparks did commit acts of violence outside of the drug conspiracy. There was testimony about him assaulting a neighbor that merely looked at him in the wrong way. That was changing his tire. He committed acts of violence that had nothing to do with conspiracy and had nothing to do with drug proceeds, had nothing to do with drugs themselves. Is there any evidence that Hampton would have been chosen for this smackdown and beating other than his knowledge of the person who supposedly stole the drugs proceeds in the car? It is unclear because the narrative that the government used was all based on basically them trying to get this murder in there. They immediately went straight to, in their opening statement, talking about the bodies, talking about the burning of the car. I think had that evidence not been allowed in, we could have maybe got in there on a different way, but they were trying to try this murder case without actually tying it directly to Trevor Sparks. So your argument is that Hampton was not part of the conspiracy. He was a stranger to its conduct and actions and somehow he was just known to be an associate of, and I forget the guy's name who stole the car and the drugs. And that's how he came to be involved in this case? There was no evidence that came from the trial that shows that he had involvement with what the government termed the Sparks Drug Trafficking Organization. He was not from this area. It did not seem like Mr. Trevor Sparks knew who he was prior to this. It did not seem that they had any dealings in regards to drugs or anything else. And the same can be said of Ms. Brittany Broyles. But no, so I believe that the cases that were cited by the government, as far as intrinsic versus extrinsic evidence, show murders and violent acts from within the conspiracy itself, not on outside parties. Does it matter if he's an outside party if they think you have knowledge of where the person who was part of the conspiracy was, right? So they're beating Hampton because they believe he can lead them. I think it's important just because the nature of the government's argument, the nature of the Honorable Judge Kays' ruling was that Trevor Sparks committed these acts and took part in these acts because he wanted to maintain control over the folks within the conspiracy. The cases that this court has had before it were maintaining order by violent acts of co-conspirators themselves. I feel like this is different than that in the fact that the folks within this conspiracy did not know Mr. Hampton, did not know Brittany Broyles, and therefore it would not have the same sort of controlling aspect. I guess the trouble I'm having is why wouldn't the scenario that we've been discussing be contemplated by the guideline? As far as for the cross-reference, my associate, Mr. Steen, kind of talked about that a little bit in the fact that Mr. Sparks also is of the... When he last saw James Hampton, he was alive in the trunk of the car. He was alive when he was left there. There was no evidence at trial that shows that he had any further communication with the gentleman that owned the garage for which he was, that he ever met up again with them, took part in it. It's unclear from the evidence how and when James Hampton died. I feel like there wouldn't even be aiding and abetting at that point because the M.O. of this group was violence, was assaults, was kidnapping. It was a murder. Was it only the Hampton death that was used as a cross-reference? The Brittany Broyles as well. Miss Brittany Broyles, what came out of trial was... She was the girlfriend of Hampton. She was shot. It's alleged that either Mr. Patterson or another co-conspirator, Mr. Jennings, they took her from a hotel out to an alleyway and she received two gunshot wounds. Trevor Sparks was not there. Unlike the beating, that seems pretty definitive as the intent of discharging a firearm into someone's head. It would not be, as far as the intent, absolutely as far as that no evidence came out that Trevor Sparks knew about that, ordered that, or that it was reasonably foreseeable within this conspiracy. Because again, this is not the nature of what they do. They hit people, they hold them hostage, but they let them go. I have a question when you were talking about that Sparks had no knowledge. I'm trying to remember, and I thought it was Sparks, but it might have been somebody else who said, when the dead body was still in the car, they said, don't let whatever get out of that trunk or something. Wasn't that Sparks who said that? I believe that may have come out of trial, yes. Doesn't that show some kind of knowledge that a murder has taken place? Once again, don't we get right back to the same question of aiding and abetting? No, because I believe that was when it was still on the flatbed truck. It was when they were taking it back to Kansas City. I think that once again, when they got back to Kansas City, Mr. Hampton was still alive in the trunk of that car. I believe he was speaking to the nature of not letting him escape before they got back to Kansas City. I would reserve the rest of my time for rebuttal. Thank you, Mr. Board. May it please the Court, my name is Justin Davids. To first clarify something that Judge Benton mentioned, I believe that it was Sparks that would still have a base, or a total offense level of 43 based on the drugs, if the murder cross-reference wasn't applied. So in his case, it doesn't matter? It doesn't matter for two reasons from Mr. Sparks. First, the drug guideline still gets him to 43. Second, there's harmless error in this case, in the sense that Judge Kaye said, found for both Sparks and for Patterson, that even if he had sustained their objections, from Mr. Sparks, that would be the murder cross-reference. From Mr. Patterson, it would be both the murder cross-reference and his challenge to the drug calculations. And the Court did go on, if you read the transcript, the Court went on for several pages, going over the drug calculations and the alternatives. So the District Court did make a determination about that. That even if it had sustained the objections, the Court still would have imposed the sentence it did, based on the 3553A factors. The Court thoroughly discussed those factors. And in Mr. Patterson's case, Mr. Patterson does not raise any challenge to the substantive reasonableness of the Court's alternative findings. So based on that, even if this cross-reference, the murder cross-reference, wasn't properly applied, harmless error would still apply to these sentences. Addressing one of the first things that Mr. Patterson argued that the government had to show that the defendant created premeditated murder, that's not the standard here. For relevant conduct, it's that a murder did occur. The defendant does not have to be personally responsible for that murder. United States v. Clay lays that out. And the facts of United States v. Clay were essentially that there were two drug co-conspirators. One drug co-conspirator decided he was going to start ripping off his supplier. The other drug co-conspirator did not want to engage in that conduct. He eventually starts informing to the supplier that his friend is stealing drugs. And the initial co-conspirator gets wind that the supplier has been informed of this. So he arranges for another person and a third person to go beat up and rob this informant. They go to the house and they do, much like in this case. They start beating up the informant, they start torturing him, and they eventually shoot him in the head. And he dies. And in that case, the court agreed that it was reasonably foreseeable to the first co-conspirator who had sent the men to the house that the murder was relevant conduct and that the cross reference applied. Even though that defendant did not order a murder, he only ordered them to beat him up and rob him. They said that given the violent nature, that that was reasonably foreseeable. So again, it doesn't have to be that Patterson committed the murder. It doesn't have to be that Sparks committed the murder. It's only that the murder occurred during the course of the conspiracy. And then is it reasonably foreseeable to them? And I think the violent nature of the conspiracy indicates how clearly it was reasonably foreseeable. I think that in particular to Hampton, the fact that they have tied him to a chair with electrical, with extension cords, that they beat him, that they put a drill into his knee, that they hold knives to his throat, that they then, after a night of doing that, throw him in a trunk of his own car. He briefly escapes. They track him down and throw him back into that trunk. And they drive across the state with him in that trunk. Meanwhile, back at the house where this torture occurred, the other co-conspirators are burning anything associated with the murder. I think that that makes this reasonably foreseeable, that the murder was committed in the course of this conspiracy. James Hampton apparently knew Dave Richards. Dave Richards had a long history with Trevor Sparks in this conspiracy. The evidence seemed to suggest that people thought that James Hampton would know where Richards was. It appears that after being with Hampton, there became some suspicions that Mr. Hampton may have been in on robbing this money and drugs. So that is how it's tied to the conspiracy. So the idea that no one had previously died as a result of these actions, I think, is irrelevant. I don't think that in a situation where Clay, as far as I know, reading the Clay opinion, that the first time someone is murdered, you can apply to cross-reference. But if you're a drug conspiracy that just happens to torture and beat people and let them go, you get a free pass until someone is actually killed. And then after that, you can prove it. That's essentially what the defendants are arguing here on appeal, and I don't believe that Eighth Circuit case law supports that proposition. To go briefly to the motion in limit A. The only question I've got about that Clay case is that as I read Clay, ultimately the district judge in that case made a specific finding that under 3553A, he was going to the same place anyhow, and that the decision was not being based upon the guideline calculation, whether it's erroneous or not. Which is identical to what was done in Sparks' case, but was that done in Patterson's case as well? Yeah. So Patterson raised two main arguments. Yeah, the drug quantity. The drug quantity for Mr. Patterson doesn't matter if the cross-reference applies. So first he argued the cross-reference didn't apply. Then next he argues, all right, if the cross-reference doesn't apply, then the drug calculation is also wrong. And the drug amount should be reduced. So Judge Case first addressed the cross-reference, then Judge Case addresses the drug quantity argument. And makes his finding and finds that there's enough for 15 kilograms in this situation. Frankly, Mr. Patterson received a huge break only getting 15 kilograms. Mr. Patterson admitted that he knew that Mr. Sparks was dealing 10 kilograms a week. It only takes a week and a half to get the 15 kilograms. And so not only does he admit that, Mr. Patterson is present for this incident where there's a meetup at McDonald's involving Mr. McGinnis and Mr. McCorry, where Sparks is attempting to get another 10 kilograms. Which, again, corroborates his statement that there's 10 kilograms a week. And so there's 20 kilograms right there. And there were records of Mr. Sparks' interview, or I'm sorry, Mr. Patterson's interviews, his Miranda interviews with law enforcement submitted at the sentencing. And he says, this is in Exhibit 6A at Gin 92642, he told them, I know everything what Trevor's doing, I was out there with him. That supports both the drug calculation and frankly, I think, the cross-reference. He admits that he knew everything that Trevor was doing because he was out there doing it with him. And that's his own words. But to go back to the motion to eliminate, it is intrinsic to the conspiracy. US v. Montano is a case that specifically holds that murders like this are intrinsic. Mr. Sparks would like to differentiate that it was about, those cases are about murders of co-conspirators. But I don't see how that makes a difference. What is the important part is the intent of these murders. And the intent here was to recover drugs and money that had been stolen. It was to keep co-conspirators in line. Dave Richards was a co-conspirator and had absconded with the money. And there's some suspicion that Hampton was involved with that. So this is a warning sign to other co-conspirators to not do this. And it was a warning to other people that may hear about the Sparks Drug Conspiracy to not mess with them. This was all about Mr. Sparks maintaining control of the conspiracy and furthering the conspiracy. So that's why it was intrinsic and that's why Judge Case's decision to eliminate Mr. Sparks. To allow, to deny the motion to eliminate and allow this evidence was proper. Does the court have any additional questions? Seeing none, with that the government respectfully requests this court affirm the decisions of the district court. Thank you. You each used all of your time, but we'll give you a minute each to have some rebuttal to what you've heard from the government. Thank you, Your Honor. I'll be quick. First, as it relates to Broyles, there was no finding against Mr. Patterson that he killed Broyles. And the district court immediately came out on the bench and said that. So all of the evidence as to the cross-reference was directed Patterson and Mr. Hampton. That's why the finding by the district court on the cross-reference is so significant for Hampton. Because he got immediately raised from a base level offense of 38, and with acceptance would have been 35, to 43, which put him at this 560 level. If he had been at the adjusted base offense level on the cross-reference and not been found, he would have been at an adjusted offense level of 35, which would have been like 292 to 356. So it's a 200 plus month difference that we're talking about because of the finding of the cross-reference. Second, the foreseeability issue, I believe, favors Mr. Patterson because when he last left Mr. Hampton, in the care and custody and control of others in the conspiracy, Mr. Hampton was alive. Four days later, Mr. Patterson is involved in contact when they find and recover the body of Mr. Hampton. He is dead at that point, but there's no ballistic evidence. There's no forensic evidence that suggests that Mr. Patterson killed Mr. Hampton at that point. And that is different from Clay, Your Honor, because in Clay, they snuck into the house, and they shot the victim in the back of the head, and later there was testimony about that. We don't have any of that here. And there was ballistic evidence to support that position. But Mr. Clay, I thought he wasn't present at the time that that shooting took place. And so the argument in that case was it was reasonably foreseeable that the murder would take place. Isn't that exactly the same argument that's being advanced here? In that particular instance, there is at least a conspiracy and reasonable foreseeability about the defendants entering that property to basically steal from him and beat him up. But I don't think that the same facts exist here. There was not a plan to beat up Mr. Hampton. It happens kind of on the fly, because there's an argument that breaks out, but there was no plan discussed in advance. In the Clay case, and it's a slight distinction, Your Honor, but in the Clay case, you could see how it's reasonably foreseeable that if you go into someone's house and rob them with a gun in hand, that that's potentially what's going to happen. But here, they beat him up, put him in the trunk of the car, and then Patterson leaves the scene. And then my final point, Your Honor, is that the evidence that the Court bases its finding on for the cross-reference is in part based on trial testimony, as the Court recalls, that it had listened to trial testimony as it related to Patterson. It didn't. Nobody said that Patterson killed Hampton. There was no witness to that. And the Court also bases some of its reasoning on unsworn testimony that appears, not testimony, but unsworn statements that appear in the PSR. And this Court has time and time again reiterated that if the defendant objects to the statements in a PSR, the government should put on some evidence to corroborate what was being said. So if you didn't have trial testimony about Mr. Patterson's involvement in the murder and directly linking him to it, and then you don't corroborate that at sentencing after the defendant objects, I would suggest that the Court misinterpreted what the evidence was and did not have a reasonable basis upon which to base its conclusion. Thank you, Your Honor. Thank you, Mr. Nissen. Mr. Davids. Excuse me, more. No, it's quite all right, Your Honor. The motion to eliminate was actually originally when the charge was for a continuing criminal enterprise. That's the way that the judge made his ruling. And in that, it was required to show that he was an organizer, supervisor, manager of at least five others. That order came down and then the government filed a notice that they were not going to be proceeding on the CCE charge. They actually switched them to just do the conspiracy. I think maybe they would have an argument that that was intrinsic for the purposes of CCE, but as far as the conspiracy, I don't believe it was. This Court has often held that intrinsic evidence is only an inimitable. Such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts. I feel like this is the type of case, type of evidence that the Court tries to keep out of those. And that's the end of my time. Thank you, Your Honors. The Court wishes to thank all counsel for your participation in argument before the Court this morning. It's been helpful. We'll take the case under advisement and render a decision in due course. Thank you.